**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **GERALD CARTER,** | § | |
| **PLAINTIFF** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  5:11-cv-492 FB** |
| **NORTHSIDE INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| **DEFENDANT** | § | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MOTION FOR PARTIAL DISMISSAL**

Now Comes Defendant Northside Independent School District (hereinafter, "the District") and files this Motion for Summary Judgment and Motion for Partial Dismissal and shows the Court the following:

**I.
PROCEDURAL HISTORY**

1.      This action was commenced on or about May 23, 2011, in the County Court of Law No. 2, as Cause No. 369524.  *See* Dkt. No. 1 (Plaintiff's Original Petition).  In his Original Petition, Plaintiff claims he suffered: (1) discrimination based on his disability in violation of the Americans with Disabilities Act ("ADA") and (2) retaliation in violation of the ADA.  *Id.* The District filed an original answer and affirmative defenses in state court and removed this matter to federal court on or about June 17, 2011.  *See* Dkt. No. 2, 3.  Pursuant to the Court's Scheduling Order, the District timely files this Motion.  *See* Dkt. No. 13.

**II.
SUMMARY JUDGMENT STANDARD**

2.      The summary judgment standard is well known by this Court.  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)**.**

### III.
### SUMMARY JUDGMENT EVIDENCE

3.      The District incorporates by reference for all purposes the items attached to and made part of this Motion in Appendix: Defendant's Evidentiary Summary of Material Facts, as required by Local Rule CV-7.

### IV.
### STATEMENT OF FACTS

4.      As set out in Defendant's Appendix, Plaintiff, an elementary school teacher at the District, experienced significant difficulties performing the essential functions of his job for the last several school years, such as meeting deadlines to input student grades and to turn in completed lesson plans.  *See* Appendix at ¶¶4, 8-18, 24-25, 27-34.  Often, when his performance problems were discussed with him, he would immediately submit a request for medical leave of absence.  *See* Appendix at ¶¶14, 19, 35.  Over the course of two school years (2009-10 and 2010-11), he was absent for over 60% of the school days, missing approximately 228 work days out of a total of 374 total work days.  *See* Ex. C.  His most recent Fitness for Duty report indicated that Plaintiff's leave would be for an "indefinite" duration.  *See* Ex. C; C7.

5.      Principal Lori Shaw required all teachers on her campus to turn in their completed lesson plans for the following week on Friday; she also required teachers to input students' grades weekly, with a minimum requirement of two grades per subject, per student, each week. *See* Appendix at ¶¶5-7, 26.  Principal Shaw communicated these requirements to all teachers, including Mr. Carter, at the beginning of each school year and at faculty meetings throughout the year. *Id.;* Ex. B.  This requirement was also set out in the teacher's Handbook and discussed at grade level team meetings. *Id.*  Mr. Carter, however, routinely failed to submit completed lesson plans and student grades, even with accommodations. *See* Appendix at ¶¶4, 5-18, 24-25, 27-34; Ex. B.

6.      Specifically, Plaintiff began having documented performance problems in October 2008, with his failure to timely submit lesson plans, failure to meet deadlines, and poor classroom management and student performance.  *See* Appendix at ¶4, 8-9.  Plaintiff continued to have documented performance issues in April 2009, receiving a poor evaluation and again failing to comply with repeated directives to submit lesson plans.  *Id.*  In the Fall of 2009, Plaintiff received verbal reminders and written reprimands concerning his failure to turn in lesson plans and input student grades.  *See* Appendix at ¶¶11-16.  Additionally, his class passing rates on standardized benchmarks in Writing and Reading were 39% and 50%, respectively.  *Id.* at ¶12.  After receiving a written reprimand for failing to submit lesson plans on or about October 30, 2009, Plaintiff requested an extended leave of absence on November 4, 2009, taking leave through January 4, 2010.  *Id.* at ¶14.

7.      On his return to work, he still experienced performance issues, repeatedly failing to complete and submit lesson plans for his class and input student grades.  *Id. at* ¶17-18.  He was reminded in early January that grade reports were due on January 15, 2010, and all grades had to be entered before that date.  *Id.*  Plaintiff repeatedly failed to comply with the grading requirements, resulting in his supervisors having to complete his grading for him.  *Id.*  On January 14, 2010, Plaintiff received another written reprimand for failing to input student grades timely.  *Id.*  The next day, Plaintiff requested an extended leave of absence, which he took through June 7, 2010.  *Id.* at ¶19.

8.      On or about June 18, 2010, Mr. Carter requested accommodations, including team meetings with his grade level, reassignment to a different grade level, permission to turn his lesson plans in on a Monday instead of a Friday, elimination of weekly meetings with his supervisors, and reassignment to a different campus.  *Id.* at ¶¶20-22.  The District granted most

of his accommodations.  *Id.* at ¶¶20-23. The District agreed to have Mr. Carter's grade team leader assist him in completion of his lesson plans, with the team drafting the lesson plans for all core subjects and Mr. Carter's responsibility simply being to personalize the lesson plans to reflect any special needs of his students and incorporate his instructional schedule into the plans. *Id.*  Additionally, the District agreed to allow him to extend the time to turn in his lesson plans for Tuesday through Friday on the following Monday, but Monday's lesson plans had to be turned in on Friday.  *Id.*  Additionally, the District agreed to suspend his weekly meetings with Ms. Shaw unless and until Mr. Carter or Ms. Shaw decided he needed additional assistance again.  *Id.*  The District denied his request to transfer to another campus. *Id.*

9.     Despite the accommodations, Plaintiff continued to fail to perform the essential functions of his job, repeatedly failing to complete lesson plans and input student grades and continuing to have performance issues in the classroom.  *Id*  at ¶¶24-25, 27-34.  As a result, the Superintendent proposed the nonrenewal of Mr. Carter's contract, but before a hearing on the proposed nonrenewal could occur, Mr. Carter resigned.  *Id.* at ¶¶35-36.  Subsequently, Mr. Carter filed this lawsuit.

10.     Mr. Carter initially filed his Charge of Discrimination with the EEOC on April 26, 2010, alleging that he was discriminated against for his disability of depression when he was "counseled on performance issues" in November 2009 and January 2010.  He amended his Charge of Discrimination on June 21, 2010 and January 10, 2011, alleging the District retaliated against him by failing to accommodate him and by conducting observations of his classroom, reprimanding him in January 2010, and requiring him to meet with his supervisors.  *See* Ex. B28-30.  His lawsuit makes the same allegations as in his EEOC charge and amendments, and in his lawsuit, he additionally alleges a constructive discharge claim.

11.    As set out below, because Plaintiff did not raise the alleged constructive discharge claim in his EEOC charge, he failed to exhaust his administrative remedies concerning that claim, and the Court must dismiss it for lack of jurisdiction.  Additionally, the District is entitled to summary judgment on all of Plaintiff's claims because he was not a qualified individual with a disability under the ADA and the District had legitimate, non-discriminatory and non-retaliatory reasons for its employment actions concerning Plaintiff.

**V.**
**ARGUMENTS AND AUTHORITIES**

**A.   _Plaintiff's Constructive Discharge Claim_**

    **(1)    _The Court lacks jurisdiction over Plaintiff's constructive discharge claim because he has failed to exhaust his administrative remedies_**

12.    Plaintiff claims in his Original Complaint that he had no "alternative but to constructively terminate his employment with Defendant."  _See_ Dkt. No. 3 (Plaintiff's Original Petition) at 4.  However, Plaintiff never filed a claim for discrimination for alleged constructive discharge with the EEOC.  _See_ Ex. B28-30.  Instead, he makes such claim for the first time in his Original Petition.  _See_ Dkt. No. 3 (Plaintiff's Original Petition) at 4.  Plaintiff tendered his resignation on April 22, 2011, but did not further amend his earlier EEOC Charge to include a constructive discharge claim.  _See_ Ex. B24; B28-30.

13.    It is well established that a plaintiff must exhaust his administrative remedies before bringing a claim under the ADA; a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged violation.  _See Manning v. Chevron Chemical Co., LLC,_ 332 F.3d 874, 878 (5th Cir.2003), _cert. denied,_ 540 U.S. 1107 (2004).  The timely filing of a charge of discrimination is a condition precedent to the filing of an ADA action in federal district court.  _See Doe v. Auchan Hypermarket,_ 96 F.3d 787 (5th Cir. 1996) (noting procedures of Title

VII apply to ADA claims).  Once a plaintiff receives a right-to-sue letter under the ADA, "the claims asserted in the complaint may not exceed the scope of the EEOC charge." *Id.*  Here, Plaintiff did not include an allegation of constructive discharge in his original Charge nor his amended Charges.  *See* Ex. B28-30.  Because Plaintiff failed to exhaust his administrative remedies regarding his alleged constructive discharge, this Court lacks jurisdiction to hear Plaintiff's claims concerning constructive discharge.  As a result, this Court should dismiss Plaintiff's constructive discharge claims for lack of jurisdiction.

        **(2)** ***Plaintiff was not constructively discharged***

        14.     Even assuming, *arguendo,* that Plaintiff did exhaust his administrative remedies regarding his constructive discharge claim, he cannot establish that he was constructively discharged by the District.  A constructive discharge occurs when an employer makes conditions "so intolerable that a reasonable employee would feel compelled to resign."  *Hunt v. Rapides Healthcare Sys., LLC.,* 277 F.3d 757, 771 (5th Cir. 2001).  Factors courts consider include: demotion, reduction in salary; reduction in job responsibilities; reassignment to menial or degrading work; badgering, harassment, or humiliation by the employer calculated to encourage resignation; or offers of early retirement that would make the employee worse off, whether the offer was accepted or not.  *Id.* at 771-72.  The discriminatory conduct required for a determination of constructive discharge "must be based upon harassment of a greater severity or pervasiveness that the minimum required to prove a hostile work environment."  *Dillard Dep't Stores, Inc. v. Gonzales,* 72 S.W.3d 398, 409 (Tex. App.—El Paso 2002, pet. denied).

        15.     In the instant case, Plaintiff submitted his resignation on April 22, 2011.  *See* Ex. B24.  In his deposition, Plaintiff admitted that he decided to resign because he felt that the District would not "give [him] the accommodations to do [his] job" and that resigning would be

"less damage than to be non-renewed."  *See* Ex. A1 (Plaintiff's deposition) at 83:19-24.  Clearly, his reasons for resigning did not rise to the level of "severe and pervasive harassment" that would compel a reasonable person to resign.  None of the factors mentioned in *Hunt* are present here.  Additionally, unfavorable work evaluations or reprimands do not amount to constructive discharge.  *See Junior v. Texaco, Inc.,* 688 F.2d 377, 380 (5th Cir. 1982); *see also Lopez v. Webb Consol. Indep. Sch. Dist.,* 45 Fed. Appx. 325, 2002 WL 1899577 (5th Cir. 2002) (reprimand that had basis in fact was not so intolerable as to amount to constructive discharge).

16.    Moreover, Plaintiff's contract had been proposed for nonrenewal, which required an evidentiary hearing before the School Board, pursuant to District Policy and state law since Plaintiff had requested a hearing.  *See* Ex. B22, B23; *see also* TEX. EDUC. CODE. ANN. §21.207. At the hearing, Plaintiff would be given an opportunity to present his case, and after the evidentiary hearing, the School Board would then determine whether to renew or non-renew Plaintiff's employment contract.  *Id.*  Plaintiff chose to resign rather than proceed with a hearing before the School Board.  *See* Ex. B; B24.  Because no such hearing occurred due to Plaintiff's resignation, the School board made no decision on the proposed nonrenewal of Plaintiff's contract.  *See Clark v. Dallas Indep. Sch. Dist.,* No. 3:95-CV-1812G, 1996 WL 706866 at *5 (N.D. Tex. Dec. 3, 1996) (teacher's resignation before school board hearing or decision on her contract status did not amount to constructive discharge).  The conditions of Plaintiff's employment clearly did not arise to such a level that would compel him to resign, as a matter of law.  *See id.* (mere anticipation of possible nonrenewal decision by school board did not alter "terms, conditions, and privileges of employment").  Thus, even assuming jurisdiction over Plaintiff's constructive discharge claim, the Court should deny Plaintiff's constructive discharge claim as a matter of law.

B. ***Plaintiff's Disability Discrimination Claims***

17.     Plaintiff contends that the District discriminated against him based on his disability in violation of the ADA.  *See* Dkt. No. 3 (Plaintiff's Original Petition) at 4.  Under the ADA, an employer may not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to…discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a) (2010).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8) (2010).  To determine whether someone is a qualified individual, courts must determine "whether the individual could perform the essential functions of the job" and, if not, determine "whether any reasonable accommodation by the employer would enable him to perform those functions." *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993).

18.     The well-known *McDonnell-Douglas* burden-shifting analysis applies to claims brought under the ADA based on circumstantial evidence.  *See McDonnell Douglas v. Green,* 411 U.S. 792 (1973); *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 279 (5th Cir. 2000).  Under this framework a plaintiff must first make a *prima facie* showing of discrimination by establishing that: (1) he is disabled; (2) he is qualified for the job; and (3) he suffered an adverse employment decision based on his disability.  *Still v. Freeport-McMoran, Inc.,* 120 F.3d 50, 51-52 (5th Cir.1997).  Once the plaintiff makes a *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *McInnis,* 207 F.3d at 279.  Then, the burden shifts back to the plaintiff to

establish that the articulated reason was merely a pretext for unlawful discrimination. *Id*. at 280. Here, Plaintiff cannot make out his *prima facie* case because he was not a "qualified individual."

**(1)    _Plaintiff is not a "qualified individual with a disability"_**

19.    Under the ADA, an employee has the burden of proving he or she is a "qualified individual." *Cleveland v. Policy Mgmt. Sys. Corp*., 119 S. Ct. 1597, 1603 (1999); *Riel v. Elec. Data Sys*., 99 F.3d 678, 682 (5th Cir. 1996). As stated *supra,* a "qualified individual with a disability" is "an individual with a disability who, *with or without reasonable accommodation*, can perform the *essential functions* of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (emphasis added); *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 483 (5th Cir. 2001); *Riel v. Electronic Data Sys. Corp.,* 99 F.3d 678, 681 (5th Cir.1996). To prove he is a qualified individual, Plaintiff must show 1) that he could perform the essential functions of the job in spite of his disability; or 2) that a reasonable accommodation would have enabled him to perform the essential functions of the job. *Forman v. The Babcock & Wilcox Co.,* 117 F.3d 800, 809 (5th Cir.1997), *cert. denied,* 522 U.S. 1115 (1998). Here, Plaintiff could not perform the essential functions of his job because he failed to appear for work. Additionally, when he was present at work, he could not perform the essential functions of his job such as completing lesson plans, inputting student grades, meeting with his supervisor, and maintaining emotional control, even with reasonable accommodations.

**a)    _Plaintiff could not perform the essential elements of the job_**

20.    An essential element of any job is the ability to appear for work. *See Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 759 (5th Cir.1996). The Fifth Circuit has recognized that "[a]n essential element of any ... job is an ability to appear for work ... and to complete assigned tasks within a reasonable period of time." *Rogers,*87 F.3d at 759; *see also*

*Grubb v. Southwest Airlines*, 296 Fed. Appx. 383, 388, 2008 WL 4538313 (5th Cir. 2008) ("Lack of physical presence is a commonly-accepted disqualification for ADA protection"), *cert. denied,* 129 S.Ct. 1986 (2009). Indeed, this is well established among other District and Circuit courts. *See Carr v. Reno,* 23 F.3d 525, 529 (D.C.Cir.1994) ("essential function of any government job is an ability to appear for work"); *Foremanye v. Board of Community College Trustees for Baltimore County*, 956 F. Supp. 574, 578-79 (D. Md. 1996) (concluding that college assessment coordinator who was unable to work certain hours per week required of position could not perform essential functions of job) *aff'd,* 107 F.3d 865 (4th Cir. 1997); *Barfield v. Bell South Telecomms., Inc.,* 886 F. Supp. 1321, 1326 (S.D. Miss. 1995) ("[R]egular attendance at work is an essential function of virtually all jobs."); *Walders v. Garrett,* 765 F.Supp. 303, 309 (E.D.Va.1991) ("few would dispute that, in general, employees cannot perform their job successfully without meeting some threshold of both attendance and regularity."), *aff'd,* 956 F.2d 1163 (4th Cir.1992); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 979 (E.D. Pa.1990) ("Attendance is necessarily the fundamental prerequisite to job qualification") *aff'd*, 928 F.2d 369, (3d Cir. 1991); *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn.1986) (an employee who "does not come to work cannot perform any of his job functions, essential or otherwise"), *aff'd,* 831 F.2d 298 (6th Cir.1987).

21. An essential job function of a public schoolteacher is to be present when the students are at school. *See Tyndall v. Nat'l Educ. Centers, Inc. of California,* 31 F.3d 209, 213 (4th Cir. 1994); *see also Salmon v. Dade County Sch. Bd.,* 4 F. Supp. 2d 1157, 1161 (S.D. Fla. 1998) (public school guidance counselor's job, "unlike other jobs that can be performed off site or deferred until a later day," involves "counsel[ing] students at the school during the hours in which the children are in attendance.") In *Tyndall,* a teacher's missing forty days of work in a

seven month period "rendered her unable to function effectively as a teacher" in the eyes of the court, "regardless of the fact that she possessed the necessary teaching skills and performed well when she was at work." *Tyndall*, 31 F.3d at 213.   The court reasoned that "[i]n addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis.  Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee 'who does not come to work cannot perform *any* of his job functions, essential or otherwise.'" *Id.*

22.     "Nothing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect." *Rogers,* 87 F.3d at 759.  An employer is not required to provide leave (even unpaid) of unlimited or unknown duration as a reasonable accommodation.  *Gazda v. Pioneer Chlor Alkali Co.,* 10 F.Supp.2d 656, 673 (S.D. Texas, 1997).  The District is "not required to provide an unlimited absentee policy." *Brennon v. Luco Mop Co.,* 521 F.3d 843, 849 (8th Cir.), *cert. denied,* 555 U.S. 1072 (2008).

23.     In the instant case, during two school years (2009-10 and 2010-11 school years), Plaintiff was absent for 228 days, out of the 372 contracted work days; thus, Plaintiff was absent from work for over 60% of the time.  *See* Ex. C.   Additionally, the last Fitness-for-Duty Certificate received from Plaintiff's doctor, indicated that his date to return to work was "indefinite."  *See* Ex. C7.  Although leave can be an accommodation, "indefinite leave" is not reasonable.  *See Brannon,* 521 F.3d at 849.   An employer is not required to provide "an unlimited absentee policy." *Id.*  Here, Plaintiff was not only excessively absent from school, but the District could not even know when to expect him to return to work.  Thus, Plaintiff could not perform the essential functions of his job by appearing for work.  Not being physically present at

his job, Plaintiff could not perform any of his job functions, essential or otherwise.  *See Tyndall*, 31 F.3d at 213.   Additionally, as shown *infra*, even when Plaintiff was present and received reasonable accommodations, he still could not perform the essential functions of his job.  Thus, Plaintiff is not a qualified individual with a disability, and his disability discrimination claim fails as a matter of law.

24.     Notwithstanding Plaintiff's excessive absences, Plaintiff could not perform other essential functions of his job even when he was present for his job, such as preparing his lesson plans, inputting student grades, and conferencing with his supervisor.  *See* Ex. B.  Evidence of whether a particular function is essential includes the employer's judgment and written job descriptions.  29 CFR § 1630.2 (n)(3)(i)-(ii).  Here, the evidence shows that the job description for classroom teachers included the following "Duties and Responsibilities:"

> 1.     Develop and implement lesson plans that fulfill the requirements of the district's curriculum program.
> 2.     Prepare lessons that reflect accommodations for differences in student learning styles….
> 5.     Work cooperatively with administrators, team leaders, department coordinators, content specialists and other staff as needed to meet curriculum objectives….
> 9.     Manage student behavior in accordance with Student Code of Conduct and student handbook….
> 12.    Establish and maintain open communication by conducting conferences with parents, students, principals and teachers.
> 13.    Compile and maintain open communication by conducting conferences with parents, students, principals and teachers….

*See* Ex. B2.

Additionally, under "Working Conditions – Teachers," the job description further requires teachers to "[m]aintain emotional control under stress."  *See* Ex. A1 (Plaintiff's deposition) at 40:5-9; B2.

25.     In the instant case, Plaintiff alleges that the District discriminated against him because he was counseled on performance issues and that he was retaliated against when he

received two reprimands, his supervisors conducted observations of his classroom and he had meetings with his supervisors. *See* Dkt. No. 3 (Plaintiff's Original Petition) at 3-5; *see also* Ex. B28-30 (Plaintiff's EEOC Charge and Amendments).   However, the counseling, reprimands, observations, and meetings at issue concerned Plaintiff's specific and documented performance issues including the low passing rate of Plaintiff's students, his lack of classroom management and instruction, his incomplete lesson plans, and his failure to input grades. *See* Ex. A1 (Plaintiff's deposition) at 42:25-43:16; 43:22-44:2; 61:23-62:6; 66:12-17; 72:5-9; 73:19-76:14; Ex. B.  Plaintiff admits that he missed deadlines and could not keep up with the necessary paperwork.  *See* Ex. A1 at 45:8-15; 47:25; 48:1-13.   The administration's concerns related directly to the essential functions of Plaintiff's job, and they made efforts to assist him with his duties. *See* Ex. A1 at 44:3-6; Ex. B.

26.      Plaintiff acknowledged that his job required emotional control under stress. *See* Ex. A1 at 40:5-9; B2.  By Plaintiff's own admissions, he could not maintain emotional control at school, admitting that he would cry at school on a daily basis, for no reason.  *See* Ex. A1 at 38:2-16.  He also explained that the reason for his voluntary partial hospitalization in which he missed four weeks of school, was due solely to the fact that he had received one reprimand for not turning in lesson plans. *See* Ex. A1 at 37:3-13.   Even Plaintiff's doctor told him that being written-up once, was not a "big deal." *See* Ex. A1 at 51:18-23.   Additionally, by his own admission, he failed to turn in his lesson plans timely and he did not input student grades timely. *See* Ex. A1 at 42:25-43:16; 43:22-44:2; 45:13; 47:25-48:13; 61:23-62:6; 66:12-17; 72:5-9; 73:19-76:14.  Ms. Shaw reminded Plaintiff throughout the school year to turn in his lesson plans and grades.  He was given verbal and written directives to do so.  Nevertheless, he repeatedly

failed to do so.  Accordingly, Plaintiff could not perform the essential functions of his job, and this Court should deny his ADA claim as a matter of law.

<b>b)</b>      <b>The District Provided Reasonable Accommodations</b>

27.     Plaintiff claims that the District failed to reasonably accommodate him.  *See* Dkt. No. 3 (Plaintiff's Original Petition) at 4-5.  The ADA requires an employer to provide an effective accommodation, not necessarily the "best" accommodation nor the accommodation that the individual most wants.  *See* Appendix to 29 C.F.R. § 1630.9 ("the accommodation…does not have to be the 'best' accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated"); *E.E.O.C. v. Agro Distribution, LLC,* 555 F.3d 462, 471 (5th Cir.2009).  The ADA does not provide a right to an employee's preferred accommodation.  *Id.*  Additionally, an employer does not have to modify or eliminate essential functions of the job as a reasonable accommodation.  *Hennagir v. Utah Department of Corrections,* 587 F.3d 1255, 1264 (10th Cir. 2009).  "[T]he ADA does not require employers to modify the duties of other employees in order to provide a reasonable accommodation.  An employer is not required to eliminate or reallocate essential functions of a position in order to provide accommodation."  *Herrera v. CTS Corp.,* 183 F. Supp. 2d 921, 930 (S.D. Tex. 2002); *see Bradley v. University of Tex. M.D. Anderson Cancer Ctr.,* 3 F.3d 922, 925 (5th Cir.1993), *cert. denied,* 510 U.S. 1119 (1994).  In fact, "[a]n accommodation that does not permit an employee to perform essential job functions cannot be considered reasonable."  *Cortez v. Raytheon Co.,* 663 F. Supp. 2d 514, 525 (N.D. Tex. 2009).

28.     Here, Plaintiff alleges that he "requested certain accommodation[s] in order to alleviate the stress he was put under by Defendant," including that he be "moved to another facility."  *See* Dkt. No. 3 (Plaintiff's Original Petition) at 4.  Plaintiff requested the following

accommodations in writing on or about June 18, 2010: (1) a "[t]eam plan" with his "grade level to discuss student progress and plan for the coming week," (2) reassignment to a different grade level (preferring 3rd, 4th, or 5th grade), (3) permit his lesson plans to be turned in on a Monday instead of a Friday, (4) eliminate weekly meetings with his supervisors, and (5) reassignment to a different campus.  *See* Ex. B11.  Principal Shaw and District administrators met with Plaintiff on June 18, 2010, to discuss his accommodation requests.  *See* Ex. B; C.  In response to his first request, team planning within each grade level was already in place and already met weekly to review student progress and plan for the upcoming weeks.  Ex. B.

29.    For the 2010-11 school year, the District reassigned Plaintiff to First Grade, to which he agreed, due to First Grade's requiring less paperwork and having less rigorous standards (being that there is no standardized testing in that grade), hoping to assist Plaintiff in performing his essential job duties.  *See* Ex. B; C.  Plaintiff had indicated that he believed it would be a "good fit" because he did not want the stress of teaching a TAKS testing grade level. Ex. A1 at 69:13-16; B.

30.    Regarding Plaintiff's lesson plan accommodation request, timely completion of classroom lesson plans are an essential function of Plaintiff's job.  *See* Ex. B.  Lesson plans are necessary not only for the overall organization of the classroom and implementation of instruction, but also to allow substitutes to know how to implement instruction when a teacher is absent, which was especially critical in this case considering Plaintiff's excessive absences.  *See* Ex. B.  Nevertheless, the District accommodated Plaintiff by assigning other grade level team members to complete portions of Plaintiff's lesson plans for him.  *See* Ex. B; C.  In particular, the grade level team wrote the first grade's lesson plans for all core subjects, leaving Plaintiff with the responsibility of only having to personalize the plans for his particular classroom to

reflect any special needs and incorporate his class' instructional schedule. *See* Ex. B; C. The District permitted Plaintiff to turn in his lesson plans on Mondays, instead of Fridays, with the exception of Monday's plans had to be turned in the preceding Friday. *See* Ex. B.

31.     Concerning the weekly meeting with administrators, the District agreed to forego the meetings unless and until Plaintiff requested meetings with his principal or the principal found that Plaintiff's performance again necessitated another meeting. *See* Ex. B. Regarding Plaintiff's request for reassignment to a different campus, an employer is not required to change an employee's supervisor as a reasonable accommodation. *See Cannice v. Norwest Bank Iowa, N.A.,* 189 F.3d 732, 728 (8th Cir. 1999); *Kennedy v. Dresser Rand Co.,* 193 F.3d 120, 122-23 (2nd Cir.1999), *cert. denied,* 528 U.S. 1190 (2000); *Gaul v. Lucent Tech. Inc.,* 134 F.3d 576, 581 (3d Cir. 1998); *Weiler v. Household Fin. Corp.,* 101 F.3d 519, 526 (7th Cir. 1996); *Wernick v. Federal Reserve Bank of N.Y.,* 91 F.3d 379, 384 (2d Cir. 1996); *see also* EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship, No 915.002 (10/17/02), Question No. 33. Additionally, an employee is not entitled to a "stress-free" or "aggravation-free" environment. *Cannice,* 189 F.3d at 728; *Newby v. Whitman,* 340 F. Supp. 2d 637, 657 (M.D. N.C. 2004).

32.     As shown by the uncontroverted evidence, the District provided Plaintiff with reasonable accommodations – accommodations that were even more than the law required - in an attempt to assist him perform the essential functions of his job. Nevertheless, Plaintiff still failed to perform his essential job duties. Even after being given accommodations, Plaintiff still failed to input student grades, failed to timely submit his lesson plans – even with the minimal amount of input he was required to provide, and continued to struggle in teaching his students. *See* Ex. B. Thus, contrary to Plaintiff's allegations, the District indeed did provide Plaintiff with

reasonable accommodations.  Moreover, even with said accommodations, Plaintiff was unable to perform the essential functions of his job and as a result is not a "qualified individual with a disability" under the ADA.  Accordingly, the District is entitled to judgment as a matter of law on Plaintiff's ADA claims.

**(2)**   ***The District had legitimate nondiscriminatory reasons for its employment actions***

33.   Even assuming, *arguendo*, that Plaintiff has made out a *prima facie* case of disability discrimination, the District had legitimate, nondiscriminatory reasons for its employment actions.  The summary judgment evidence clearly shows that each of Plaintiff's directives and reprimands were justified by his failure to comply with District policy and verbal directives, especially his repeated failure to complete lesson plans and input grades, which he acknowledged.  Principal Shaw recommended nonrenewal of Plaintiff's contract based on Plaintiff's numerous deficiencies, as pointed out in his evaluations and reprimands, which deficiencies began before Plaintiff ever requested accommodations or discussed his disability, including his failure to input grades, failure to complete lesson plans, and a significant lack of student progress in his class.  *See* Ex. B.  Having legitimate, non-discriminatory reasons for its employment actions, the District is entitled to summary judgment on Plaintiff's ADA claims, and the Court should deny Plaintiff's ADA claims as a matter of law.

C.  ***Plaintiff's Retaliation Claim***

34.   Plaintiff also claims that the District retaliated against him.  *See* Dkt. No. 3 (Plaintiff's Original Petition) at 3.  In order to establish a *prima facie* case of retaliation, the plaintiff must show that: (1) he participated in or opposed a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection existed between the opposition or participation in the protected activity and the adverse employment action.  *See Washburn v.*

*Harvey*, 504 F.3d 505, 510 (5th Cir. 2007).  In Plaintiff's Original Complaint, he alleges that he was retaliated against after he filed his initial Charge of Discrimination by the District's allegedly failing to accommodate his disability; he also alleged that he was retaliated against when his supervisors observed his classroom, issued two reprimands, and required him to attend two meetings with his supervisor to discuss his performance.  *See* Dkt. No. 3 (Plaintiff's Original Petition) at 3; *see* Ex.B29-30.  To establish the second prong of his *prima facie* retaliation case, Plaintiff must establish that the reprimands, observations, and meetings were an "adverse employment action."  *See Washburn,* 504 F.3d at 510.

35.     An "adverse employment action" for retaliation claims includes such actions that "would be materially adverse to a reasonable employee… [T]hat means that the employer's actions must be harmful to the point that they would well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006).  A "materially adverse" action must produce some "injury or harm." *Littleton v. Pilot Travel Ctrs., LLC.,* 568 F.3d 641, 644 (8th Cir. 2009).  Typically, an adverse employment decision will be one in which a "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a signification change of benefits" occurs.  *Lopez v. Kempthorn,* 684 F.Supp.2d 827 (S.D. Texas, 2010); *see Jones v. Res-Care Inc.,* 613 F.3d 665, 671.  Negative performance evaluations, disciplinary write-ups, and reprimands do not constitute adverse employment actions without some form of tangible job consequence.  *See Jones,* 613 F.3d at 671; *Lopez,* 684 F.Supp.2d at 855.  A letter of reprimand, unsatisfactory performance evaluation, and counseling do not constitute adverse employment actions.  *Baloch v. Kempthorne,* 550 F.3d 1191, 1199-200

(D.C. Cir. 2008).   Not everything that makes an employee unhappy is an actionable adverse action.  *Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997).

36.     Here, Plaintiff essentially claims that a supervisor's observation of his classroom and his receiving reprimands, for incidents that he acknowledges were contrary to policy, constituted adverse employment actions.   However, case law is clear that "unpleasant work meetings, verbal reprimands…and unfair treatment do not constitute actionable adverse employment actions."  *King v. Louisiana,* 294 Fed. Appx. 77, 2008 WL 4326493 (5th Cir. 2008); *see Burlington N. & Santa Fe Ry. Co.,* 548 U.S. at 68.  He also contends that the District failed to accommodate his disability in retaliation for his filing an EEOC claim.  However, as discussed *supra,* the uncontroverted evidence shows that the District went above and beyond what the law required in attempting to accommodate him.  Plaintiff's retaliation claims fails as a matter of law, and the Court should enter summary judgment in the District's favor.

37.     Even assuming, *arguendo,* that Plaintiff suffered an adverse employment action, he cannot establish a causal link between his filing an EEOC charge and the alleged adverse employment actions.  Plaintiff must establish that the employment actions taken were based in part on knowledge of the employee's protected activity.  *See Sherrod v. American Airlines, Inc.* 132 F.3d 1112, 1122-23 (5th Cir.1998).  A causal connection cannot be inferred from temporal proximity standing alone, as "such a rule would unnecessarily tie the hands of employers." *Strong v. Univ. Healthcare Sys., LLC,* 482 F.3d 802, 808 (5th Cir.2007).  Here, the reprimands that Plaintiff received after he had filed his initial April 2010 EEOC claim (for failing to turn in completed lesson plans and input grades) were for the exact same types of infractions and failure to follow directives for which he had received reprimands and poor evaluations *before* he had ever filed an EEOC claim.  *See* Ex. B. Having had the same performance issues prior to his

EEOC complaint, Plaintiff's claim for retaliation fails as a matter of law. *See Silverman v. Board of Educ. of Chicago,* 637 F.3d 729, 743-44 (7th Cir. 2011) (finding no retaliation when employee's negative evaluations were consistent both before and after complaint of discrimination filed); *Amrhein v. Healthcare Serv. Corp.,* 546 F.3d 854, 859 (7th Cir. 2008) (finding that prior violations of work policy eclipsed inference of retaliatory link); *Strong,* 482 F.3d at 807 (holding employee failed to show her termination was retaliatory in light of fact that she had previous disciplinary incidents prior to her discrimination claims).

38.     Additionally, even assuming *arguendo* that Plaintiff can establish a *prima facie* case for retaliation, as discussed *supra,* the District's evidence shows that it had legitimate, non-discriminatory and non-retaliatory reasons for its employment actions.  *See McCoy v. City of Shreveport,* 492 F.3d 551, 559 (5th Cir.2007).  Accordingly, the Court should deny Plaintiff's retaliation claim as a matter of law. **VI.**

## **CONCLUSION**

39.     In sum, the District respectfully moves this Court to dismiss Plaintiff's constructive discharge claim and to grant this Motion for Summary Judgment and to further grant the District all such other and further relief, special or general, at law or in equity, to which it shows itself justly entitled.

Respectfully submitted,

WALSH, ANDERSON, BROWN,
GALLEGOS & GREEN, P.C.
100 NE Loop 410, Suite 900
San Antonio, Texas  78216
TEL NO. (210) 979-6633
FAX NO. (210) 979-7024


By:     /s/ D. Craig Wood
        D. CRAIG WOOD
        ATTORNEY IN CHARGE
        State Bar No. 21888700
        STACY TUER CASTILLO
        State Bar No. 00796322
        ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February 2012, a true and correct copy of the above and foregoing Defendant's Motion for Summary Judgment was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following:

Mr. Adam Poncio, Jr.
Poncio Law Offices
5410 Fredericksburg Road, Suite 109
San Antonio, TX  78229-3550
State Bar No.19158300

                          /s/ D. Craig Wood
                          D. CRAIG WOOD