## AFFIDAVIT OF LORI SHAW

STATE OF TEXAS §
§
COUNTY OF BEXAR §

BEFORE ME, the undersigned Notary Public, on this day personally appeared LORI SHAW, duly sworn, on oath stated as follows:

"My name is Lori Shaw. I am over 18 years of age and have never been convicted of a felony or a crime of moral turpitude. I am of sound mind; capable of making this Affidavit; and fully competent to testify to the matters stated herein. The statements of fact in this Affidavit are made from my personal knowledge and are all true and correct.

I am the campus principal at Mary Burns Michael Elementary School in the Northside Independent School District, and have served in that capacity since June of 2008. Gerald Carter was employed as a fourth grade teacher at Michael Elementary School in the fall of 2007; he entered into a two-year employment contract with Northside Independent School District in April 27, 2009, for the 2009-10 and 2010-11 school years. In my capacity as Principal, I am one of the custodians of records of the employment contracts and personnel files for personnel at Michael Elementary School. Attached as Exhibit "B1" and incorporated by reference for all purposes is a true and correct copy of Mr. Carter's employment contract with the District. The employment contract was kept and utilized by Northside Independent School District (hereinafter "the District") in the regular course of its operations and business.

Additionally, in my capacity as Principal of Michael Elementary School, I am familiar with the job postings and job descriptions for elementary classroom teachers at the District. I have personal knowledge that the District typically posts its General Employment Notice for Classroom Teacher on the District's website, describing the job summary, qualifications, duties and responsibilities, working conditions, and terms of employment for a teacher position at the District. In my capacity as Principal, I am one of the custodians of records for job descriptions of elementary school teachers at my campus. Attached as Exhibit "B2" and incorporated by reference for all purposes is a true and correct copy of the General Employment Notice for Classroom Teacher at the District, which is the job description of the duties of an elementary school teacher at the District. The job description was kept and utilized by the District in the regular course of its operations and business.

The classroom teacher's job description sets out a teacher's job requirements, including the requirement to develop and implement lesson plans, prepare lessons that "reflect accommodations for differences in student learning styles," work cooperatively with administrators and team leaders, manage student behavior, and maintain open communication with parents, students, principals and teachers. Additionally, the teacher job description requires that teachers maintain "emotional control under stress."

As Principal, I often observe and evaluate teachers and employees on my campus. I also meet with my vice-principal to discuss and review her observations and evaluations of employees on my campus to assess the performance of campus employees. In my capacity as Principal, my vice-principal provides me with her written evaluation of campus employees. I am one of the custodians of records for the written observations and evaluations of elementary school teachers at my campus. Attached as Exhibit "B3" and incorporated by reference for all purposes is a true and correct copy of my written evaluation of Mr. Carter dated October 20, 2008. Attached as Exhibit "B4" and incorporated by reference for all purposes is a true and correct copy of the written evaluation of Mr. Carter by Vice-Principal Evelyn Massiate dated April 13, 2009. Attached as Exhibit "B5" and incorporated by reference for all purposes is a true and correct copy of the Summative Annual Appraisal of Mr. Carter dated April 15, 2009. Exhibits "B3" "B4" and "B5" are true and correct copies of my written evaluation of Mr. Carter, Vice-Principal Massiate's evaluation of Mr. Carter, and Mr. Carter's annual summative appraisal, respectively, and they were kept and utilized by the District in the regular course of its operations and business.

In the 2008-09 school year, Mr. Carter routinely failed to timely submit completed lesson plans, did not timely complete attendance records for his class, missed several deadlines, admitted to me that he did not know which students in his class were failing, and admitted that he was not sure which of his students might need more academic assistance.

In my October 2008 evaluation of Mr. Carter, I observed that Mr. Carter was "Below Expectations" in several areas, including classroom management, compliance with District policies and directives, and monitoring student attendance and intervention needs. Vice-Principal Evelyn Massiate also evaluated Mr. Carter in April 2009. On her evaluation, she observed that Mr. Carter was "below expectations" in several areas, including following District policies and directives as well as monitoring student attendance and student intervention needs. In Mr. Carter's Summative Appraisal for the 2008-09 school year, he received "Below Expectations" in Domain VII: Compliance with Policies.

I met with Mr. Carter on April 15, 2009 to go over the details of his 2008-09 evaluations and summative appraisal, including the areas in which he received "below expectations" ratings. I discussed with him the importance of meeting deadlines and turning in lesson plans. I specifically asked him what I could do to help him improve and meet his deadlines. He told me that my reminders were sufficient.

On or about September 24, 2009, Vice-Principal Massiate reminded Mr. Carter that his students' progress reports were overdue and that he needed to turn them in to her. Attached as Exhibit "B6" and incorporated by reference for all purposes is a true and correct copy of an email thread between Mr. Carter and Ms. Massiate regarding submission of his progress reports. In my capacity as Principal, I am one of the custodians of records for email records of employees on my campus. Exhibit "B6" was kept and utilized by the District in the regular course of its operations and business. Ms. Massiate had verbally reminded Mr. Carter several times to turn in his lesson plans and grades on time.

Following that email reminder, on September 25, 2009, I, along with Ms. Massiate, met with Mr. Carter and reminded him that it is part of his job as a teacher to timely submit student grades and progress reports.

On October 20, 2009, the fourth grade teachers at my campus gave a benchmark test on Reading to their students to assess the students' preparedness to take the state-wide assessment test known as TAKS. On November 10, 2009, the fourth grade teachers gave a benchmark test on Writing to their students. As part of my duties as principal, I review the test scores for each class, and compile a chart of each classroom's progress on the benchmark tests. Attached as Exhibits "B7" and "B8" are true and correct copies of the charts I made indicating each fourth grade classroom's passage rate for the October 20, 2009 benchmark tests and November 10, 2009 tests, respectively. I made these charts at or near the time I had reviewed each classroom's test results, and they accurately reflect the passage rates per fourth grade classroom. The charts were kept and utilized in the ordinary scope of my duties as principal. As indicated on Exhibits "B7" and "B8," Mr. Carter's fourth grade class had a 50% passage rate on the Reading benchmark test and a 39% passage rate on the Writing benchmark test. Mr. Carter was the only fourth grade teacher to have a failing passing rate on the Writing benchmark test, and had the second lowest Reading passing rate.

As Principal, I require all teachers on my campus to turn in their lesson plans for the following week, in writing, by the end of the day on Friday. I require this of all my teachers for several reasons. It allows me and other administrators an opportunity to review them before they are implemented. Additionally, it ensures that the lesson plans will be available for a substitute teacher in the event that a

teacher becomes ill over the weekend, and also for the special education teachers to have time to prepare any modifications that may be necessary for any particular students who are served in a teacher's classroom. I have confirmed that other principals in the District required that lesson plans be turned in on Friday, and a few even require them to be turned in on Wednesday or Thursday due to the special education modification issue. I inform the teachers on my campus of the lesson plan deadlines at the beginning of the school year and provide them with a schedule that contains the deadlines on which to submit the completed lesson plans. Additionally, I require the grade level leaders to remind their team of the deadlines.

Before school begins and throughout the school year, I inform all of my teachers that student grades are required to be inputted on the computer weekly so that parents are able to keep track of their child's grades online. Additionally, I remind my teachers that they should have approximately two to three grades per subject per week for all students. It is not sufficient to have grades written down, but not inputted on the computer, because the District permits parents to view grades online and the parents cannot see the grades if they are merely written down and not online.

In October 2009, Mr. Carter again failed to turn in completed lesson plans. Vice-Principal Massiate reminded him of the lesson plan deadlines and asked him to submit his completed plans. He still failed to turn in completed lesson plans after the reminder. When he did turn in his lesson plans, not only were they late but they were also incomplete. Because he failed to turn in timely, completed lesson plans, on October 30, 2009, Vice-Principal Massiate issued a written reprimand to Mr. Carter. Attached as Exhibit "B9" and incorporated by reference for all purposes is a true and correct copy of October 30, 2009 reprimand, which was kept and utilized by the District in the regular course of its operations and business. Ms. Massiate then assigned fourth grade team leader, Melissa Ramon, to help remind Mr. Carter of upcoming lesson plan deadlines to assist him in meeting the deadlines.

Mr. Carter, on his own initiative, took a leave of absence after he received the October 30, 2009 reprimand. In November 2009, while Mr. Carter was on leave, which was approximately half-way into the nine week grading period, I discovered that there were very few grades inputted for Mr. Carter's students in Math, Reading, and Language Arts, which were not enough grades to prepare the progress reports that were due to be sent out to parents. Mr. Carter had not entered any grades for Science and Social Studies. Additionally, Ms. Massiate and I discovered a lot of student work left in a tray in his room, which was not graded; so, we graded the work ourselves and inputted them in the system. However, there was no student work completed for Science and Social Studies. As a result,

we had to give new assignments to Mr. Carter's students so that they would have grades for assessment and reporting purposes. At that time in the school year, Mr. Carter's students should have had a minimum of two grades per subject per week, so at least eight grades per subject. In all my years of teaching and being an administrator, I have never had a teacher fail to assign and grade a sufficient number of assignments to be able to assess students' progress and prepare progress reports. I was shocked at the lack of students' graded assignments in Mr. Carter's gradebook. He had not followed my instructions that I had given to all teachers to input grades weekly and to have at least two graded assignments per subject per week.

At that time, I, along with Ms. Massiate, also had to clean Mr. Carter's classroom because it was in substantial disorder. Of particular concern were several stacks of curriculum work that were found and had apparently never been given to his students in Science and Social Studies. As a result, we asked the other campus Science and Math teachers to assist Mr. Carter's students and give lessons and assignments to Mr. Carter's students. The substitute teacher in Mr. Carter's class during this time also gave assignments, graded them, and entered them into the system.

Mr. Carter returned to work on or about January 5, 2010. Final grades for the nine week grading period were due on January 15, 2010. Ms. Massiate reminded Mr. Carter to input his grades before January 15, 2010. Ms. Massiate also reminded at least three other teachers about timely inputting grades, which those teachers did. Shortly before the deadline, I reviewed Mr. Carter's gradebook and again discovered that he had not entered any grades during the period in which he had returned. Mr. Carter did not post any grades for the first 1.5 weeks of school in January 2010. Ms. Massiate and I again had to complete his grading and input grades so that report cards could be printed for his students.

Because he failed to input student grades timely, on January 14, 2010, Ms. Massiate issued a written reprimand to Mr. Carter. Attached as Exhibit "B10" and incorporated by reference for all purposes is a true and correct copy of the January 14, 2010 reprimand, which was kept and utilized by the District in the regular course of its operations and business. When Ms. Massiate and I met with Mr. Carter to discuss the reprimand, Mr. Carter began crying and stated that he was "not able to get the job done." He also said that "you don't deserve this." We assigned fourth grade team leader, Melissa Ramon, to help Mr. Carter with inputting grades in an effort to help him meet deadlines.

Mr. Carter, own his own initiative, took a leave of absence following his receipt of the January 14, 2010 reprimand.

On or about June 18, 2010, I, along with Employee Benefits Coordinator Mark Hardison and Assistant Superintendent Jim Miller, met with Mr. Carter to discuss his request for workplace accommodations. At that meeting, Mr. Carter presented to us a list of written requests for accommodations. Attached as Exhibit "B11" and incorporated for all purposes is a true and correct copy of Mr. Carter's June 18, 2010 list of requested accommodations that he presented at that meeting. In that letter and at the meeting, Mr. Carter requested (1) a "team plan" with his "grade level to discuss student progress and plan for the coming week," (2) a reassignment to a different grade level (preferring 3rd, 4th, or 5th grade), (3) permission that his lesson plans be turned in on a Monday instead of a Friday, (4) elimination of weekly meetings with his supervisors, and (5) reassignment to a different campus.

At that meeting, we discussed that Mr. Carter would be reassigned to teach first grade, believing it would be less stressful for him since it was not a TAKS testing grade level. Mr. Carter expressed an interest in a non-TAKS position. Regarding team meetings, we agreed that team meetings, which already occurred at my campus, would continue. We also agreed to have Mr. Carter's grade team leader assist him in completion of his lesson plans, with Mr. Carter's responsibility being to personalize the lesson plans to reflect any special needs of his students and incorporate his instructional schedule into the plans. Additionally, we agreed to allow him to extend the time to turn in his lesson plans for Tuesday through Friday on the following Monday, but Monday's lesson plans had to be turned in on Friday. Additionally, we suspended his weekly meetings with me unless he or I decided he needed additional assistance again. The District denied his request to transfer to another campus.

For the 2010-11 school year, I assigned Mr. Carter to teach first grade, as we had agreed to in June, since first graders are not required to take the TAKS test (State accountability test) like fourth graders are. Mr. Carter had told me previously that the TAKS testing was very stressful for him. In his new assignment, Mr. Carter would no longer be required to prepare any written academic portion of the lesson plans for his classroom. Rather the first grade teachers met together to plan their lessons, and then the team leader prepared the academic portion of the lesson plans for all first grade teachers. Mr. Carter was only required to tailor the lesson plans for information that applied to his particular classroom, i.e. what time his students go to lunch, physical education, music, etc. For this reason, Mr. Carter had minimal work to do with the lesson plans once they were provided by the first grade team leader, since the team leader actually prepared all academic portions

of the lesson plans. He simply needed to cut and paste from the core subject plans drafted by the team and personalize them for his classroom's lesson plans.

Attached as Exhibit "B12" are true and correct copies of relevant excerpts from the Michael Elementary Employee Handbook Procedures for 2010-11, which are kept and utilized by the District in the regular course of its operations and business. This Handbook is similar to the ones used in prior years while I was principal. The Handbook is given to each employee at my campus. The Handbook reminds teachers of the importance of entering grades weekly and to have several graded assignments per subject per student. Additionally, the Handbook reminds teachers of the requirements to complete and submit their weekly lesson plans.

On or about October 19, 2010, I checked the first grade teachers' grade books. I noticed that Mr. Carter had again failed to enter sufficient grades for his students. As of October 19, 2010, Mr. Carter had significantly less grades than the other first grade teachers. After over six weeks of school, Mr. Carter only had four Language Arts grades, eight Math grades, two Reading grades, two Science grades, and three Social Studies grades inputted. Attached as Exhibit "B13" is a true and correct copy of a chart I made of each first grade teacher's inputted grades as of October 19, 2010, which was kept and utilized by the District in the regular course of its operations and business. At that point in the grading period, Mr. Carter should have had at about twelve grades for the core subjects of Language Arts, Reading, and Math. He was significantly behind in grading.

On October 20, 2010, I met with Mr. Carter, along with Vice-Principal Geri Garza. I discussed with him that he again was failing to timely complete his lesson plans. In September 2010, Mr. Carter failed to turn in his lesson plans for at least three weeks. When he did turn in plans, they were only partially completed. I discussed with him the importance of turning in completed plans, and pointed out to him that his team was completing the core components of the plans for him, that he had very few things he needed to complete on them. I also discussed the requirement for him to input more grades. Because he was struggling meeting these requirements, I asked him to meet with me weekly so we could help him meet these deadlines. Attached as Exhibit "B14" are true and correct copies of the lesson plans that Mr. Carter turned into me for the week of September 20, 2010. Those lesson plans were substantially incomplete, and are representative of the type of incomplete plans he often submitted to me. In Exhibit "B14," Mr. Carter only included plans for math, which the math specialist had written for him, but wholly failed to include any lessons for other subject areas, even though all he had to do was cut and paste from his team's posted lesson plans, since the team wrote plans for the core subjects and the math specialist wrote his math lesson plans.

*Page 7 of 10*

On November 1 and 2, 2010, I met with the first grade team and reminded them to enter grades weekly and to have at least two grades per subject per week for each student. I also reminded them about deadlines for turning in lesson plans. Mr. Carter was present for this meeting. Attached as Exhibit "B15" are true and correct copies of the Agenda and sign-in sheet for that meeting, which are kept and utilized by the District in the regular course of its operations and business.

On November 4, 2010, Vice-Principal Geri Garza conducted a performance appraisal of Mr. Carter. Attached as Exhibit "B16" and incorporated by reference for all purposes is a true and correct copy of Mr. Carter's November 4, 2010 appraisal, which was kept and utilized by the District in the regular course of its operations and business. In his appraisal, he received "Below Expectations" ratings in several areas, including student progress, student assessment, and management of student discipline and instructional strategies. Additionally, Mr. Carter accidently left a student in the restroom when he walked his class to another room.

On November 8, 2010, I found that Mr. Carter again had not completed a sufficient number of grades in his gradebook and had not submitted completed lesson plans. I again reminded him to do so.

On November 10, 2010, two students left his classroom without permission, unnoticed by Mr. Carter. Ms. Garza and I spoke with Mr. Carter about the importance of monitoring his students and keeping track of them at all times.

Mr. Carter's first grade students showed significant lack of progress in their reading levels. Because of this, I asked our campus reading specialist to assist Mr. Carter in teaching reading. Mr. Carter routinely failed to identify students in his classroom who needed additional instruction or specialized instruction in reading.

Due to Mr. Carter's continued problems in classroom management, on or about December 1, 2010, I placed him on a Teacher In Need of Assistance ("TINA") Plan to assist him in correcting his deficiencies. It is a common practice to assist struggling teachers by placing them on a TINA plan, with the goal being to pinpoint deficiencies and target ways to help them improve. Attached as "B17" and incorporated by reference for all purposes is a true and correct copy of Mr. Carter's December 1, 2010 TINA plan, which was kept and utilized by the District in the regular course of its operations and business. In his TINA plan, he was directed to post lesson plans timely and input at least two grades per subject per week. He was also directed to work on classroom management of student behavior. The TINA provided him with assistance in lesson planning from his first grade team and feedback from a District specialist in classroom management.

On January 4, 2011, District specialist Ardyce Welch observed Mr. Carter's classroom. She provided me with a memorandum of her observations of his classroom. Attached as Exhibit "B18" and incorporated by reference for all purposes is a true and correct copy of an email Ms. Welch sent Mr. Carter and me concerning her observations and recommendations for Mr. Carter dated January 4, 2011. Said email was kept and utilized by the District in the regular course of its operations and business. In her observations, she noted that in December Mr. Carter struggled with classroom behavior management skills and getting the class to pay attention to the lesson. She observed that he still struggled with classroom management and expressed concern about the lack of academic progress of his students. She indicated that she was concerned that his students would not be prepared for second grade the following year if he did not immediately improve his instructional methods.

On January 4, 2011, I issued a written reprimand to Mr. Carter for his repeated failure to input grades. Attached as Exhibit "B19" and incorporated by reference for all purposes is a true and correct copy of the January 4, 2011 reprimand that I gave Mr. Carter, which I kept and utilized in the regular course of my job duties. Even after repeated directives to timely input grades, as of January 3, 2011, which was approximately the seventh week of the nine week grading period, Mr. Carter had only inputted eight grades in Math, six in Language Arts, eight in Reading, and three in Science.

Also on January 4, 2011, I issued a reprimand to Mr. Carter for his failure to timely complete his lesson plans. Attached as Exhibit "B20" and incorporated by reference for all purposes is a true and correct copy of the January 4, 2011 reprimand that I wrote, which I kept and utilized in the regular course of my job duties. Several weeks of lesson plans from November and December were incomplete, where Mr. Carter wholly failed to include reading instruction plans and times that were specific for his classroom, such as library and lab times.

Mr. Carter soon thereafter took a leave of absence on or about January 13, 2011 and did not return to work the rest of the school year. Due to Mr. Carter's persistent performance deficiencies and failure to follow directives, I recommended to Superintendent John Folks that he recommend to the Board of Trustees to propose Mr. Carter's contract for nonrenewal. On or about April 5, 2011, Superintendent John Folks recommended that the District's Board of Trustees propose Mr. Carter's employment contract for nonrenewal. On or about April 8, 2011, the District sent a letter to Mr. Carter notifying him of his right to a hearing before the Board of Trustees to consider the proposed nonrenewal. Attached as Exhibits "B21," "B22," and "B23" and incorporated by reference for all purposes are true and correct copies of the April 8, 2011 letter that was sent to Mr. Carter concerning his proposed nonrenewal, District Policy DFBB (Legal), and District Policy DFBB (Local),

respectively, all of which were kept and utilized in the regular course of the District's operations and business. District Policies DFBB (Legal) and DFBB (Local) set out District practices and procedures for nonrenewing a teacher's contract.

On or about April 21, 2011, Mr. Carter submitted his written resignation, which was accepted in writing by Superintendent Folks. Attached as Exhibits "B24" and "B25" and incorporated by reference for all purposes are true and correct copies of the Mr. Carter's written resignation and Dr. Folk's written acceptance of the resignation. They were kept and utilized in the regular course of the District's operations and business.

At all times relevant to this lawsuit, the District had policies in place expressly prohibiting disability discrimination and retaliation. Attached as Exhibits "B26" and "B27" and incorporated by reference for all purposes are true and correct copies of District Policy DAA (Legal) and District Policy DIA (Legal), respectively, all of which were kept and utilized in the regular course of the District's operations and business. District Policies DAA and DIA expressly prohibit disability discrimination and retaliation.

Attached as Exhibits "B28," "B29," and "B30" and incorporated by reference for all purposes are true and correct copies of the Charge of Discrimination filed by Mr. Carter on April 26, 2010, Mr. Carter's Amendment to the EEOC Charge filed on June 21, 2010, and Mr. Carter's Amendment to the EEOC Charge filed on January 10, 2011, respectively, all of which were received, kept and utilized in the regular course of the District's operations and business.

FURTHER AFFIANT SAYETH NOT."

_____
LORI SHAW

SUBSCRIBED AND SWORN TO BEFORE ME by the said ___Lori Shaw___ on this 14th day of February 2012, to certify which witness my hand and official seal.

_____
Notary Public, State of Texas

YVONNE M. CARTER
Notary Public, State of Texas
My Commission Expires
December 08, 2014